UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 3:22-CV-00010-GFVT-EBA

TIMOTHY DAVIS,                                                                                          PLAINTIFF,

V.                          **MEMORANDUM OPINION & ORDER**

SIG SAUER, INC.,                                                                                        DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

A

This is a products liability and personal injury action. Plaintiff Timothy Davis purchased a P320 model handgun manufactured by Defendant SIG Sauer, Inc. In 2021, the firearm discharged either while resting in Davis's holster (Davis's position) or while Davis was holstering the weapon after exiting his truck (SIG Sauer's position), striking Davis in the left leg.[1] Now, this matter is before the Court on Davis's motion to compel, [R. 22], and SIG Sauer's competing motion for a protective order, [R. 23]. Neither party filed a response to the other's motion, and the time to do so has elapsed.  LR 7.1(c). So, the matters are ripe for review.

On April 20, 2022—in a different case—Timothy Davis's counsel, Robert W. Zimmerman, deposed SIG Sauer's corporate designee, Sean Toner. *See* [R. 22-1]. During that deposition, Zimmerman asked Toner about SIG Sauer's decision to omit a trigger-safety mechanism from its P320 model firearm. [*Id.*]. Specifically, Zimmerman asked Toner at what "level" "the decision to sell the P320s without a manual external safety" was made.

---

[1] This factual dispute is irrelevant to the matter currently before the Court but provides helpful background.

[*Id.*]. Toner responded that he was "not sure if it went up another level or not," but surmised that if the decision were made at a higher "level," then "at that level" the decision would've been discussed with SIG Sauer's CEO: Ron Cohen. [*Id.*]. Now, based on that testimony alone, Davis moves—in this case—to compel Cohen's deposition.[2] [R. 22]. Relatedly, SIG Sauer moves for a protective order to prevent Cohen's deposition. [R. 23].

B

Rule 26(b)(1) provides that—unless otherwise limited—"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). This language is broadly construed to include "any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The scope of discovery, however, is not without limitation. It is "well established that the scope of discovery is within the sound discretion of the trial court." *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (citing *H. K. Porter Co., Inc. v. Goodyear Tire and Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976)). As such, "[a] ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown." *Id.*

When a party refuses to provide information requested by another party, which is thought by the requesting party to be within the scope of Rule 26(b), then the requesting party may move the court to compel disclosure of the requested information. FED. R. CIV. P. 37(a)(3)(B). Motions to compel may be filed where a party has failed to (1) provide a mandatory disclosure; (2) answer or admit an interrogatory or request for admission; or (3) produce discoverable information,

---

[2] Specifically, Davis seeks to ask Cohen about his decision to sell the P320 without an external trigger safety mechanism. [R. 22 at pg. 5] ("Plaintiff must be permitted to depose Ron Cohen to discover relevant information about Sig Sauer's decision not to include industry standard safety features on the P320 pistol.").

materials, or documents. *See generally* FED. R. CIV. P. 37. However, prior to moving to compel, a party must in good faith confer or attempt to confer with the opposing party "failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1). Should the court determine the matters sought to be compelled fall within the scope of Rule 26, the motion shall be granted.

That said, during discovery, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending," and "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). "The burden of establishing good cause for a protective order rests with the movant," and to demonstrate good cause a movant "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (quoting *Avrigan v. Hull*, 118 F.R.D. 252, 254 (D. D.C. 1987)) (internal quotation marks omitted). "Courts should balance the parties' right to discovery and the need for access to information with the burdens on the disclosing party and the need to prevent 'fishing expeditions.'" *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012).

C

Davis's motion to compel advances the following argument: (a) Cohen was "part of the group that made the decision" "not to include" an external safety-mechanism on the P320 model firearm; (b) and Cohen is SIG Sauer's CEO, so he "would have made the final call;" so, (c) "Cohen undoubtedly possesses relevant information which goes to the very heart of [Davis's] case." [R. 22 at pg. 5]. Davis's argument, however, assumes the truth of its conclusion—that Cohen actually possesses relevant knowledge about SIG Sauer's decision to sell P320s without an

external trigger safety mechanism. *See, e.g.*, [*Id.*] ("Sig Sauer has flatly refused to produce [Cohen,] a witness with discoverable, relevant information that would otherwise be unavailable to plaintiff."); [*Id.* at pg. 6] ("The P320 could not be made safely without an external safety, yet Mr. Cohen chose to do it anyway."). Moreover, Davis offers nothing more than conclusory statements to show he can't obtain this information through less intrusive means. [*Id.* at pg. 5].

SIG Sauer's motion for a protective order, on the other hand, posits that Davis's "sole objective in seeking to depose" Cohen "is to harass, annoy, and unduly burden" it and Cohen. [R. 23 at pg. 5]. Further, SIG Sauer argues that the discovery Davis seeks "can be obtained from some other source that is more convenient, less burdensome, or less expensive." [*Id.* at pgs. 5–6]. (quoting FED. R. CIV. P. 26(b)(2)(c)(1)). Also, SIG Sauer clarifies that its CEO, Cohen, "was not personally involved with the decision to design and sell the P320 model pistol without an external manual safety," that he "has no unique personal knowledge about this issue," and that other SIG Sauer employees "who were personally involved in the design decisions in developing the P320 model pistol" are better situated to provide Davis with the information he seeks. [*Id.* at pg. 6]; [R. 23-5]. SIG Sauer even offers good faith alternatives to Cohen's deposition that it believes will provide Davis with the information he seeks: (1) a Rule 30(b)(6) deposition or (2) depositions of lower-level employees.

Davis's primary argument against SIG Sauer's motion for a protective order is that, as he puts it, the Sixth Circuit "explicitly rejected the 'apex doctrine'"—which generally bars the deposition of high-level executives absent a showing of their unique personal knowledge—in *Serrano*. 699 F.3d at 901–02. So, Davis argues this Court should deny SIG Sauer's motion because it seeks to protect its CEO from a deposition.

True, the Sixth Circuit rejected the apex doctrine in *Serrano*. *Id.* at pg. 901 (explaining that "the apex doctrine appears to assume that harassment and abuse are inherent in depositions of high-level corporate officers and therefore allow such depositions to be barred absent a showing that the individual possesses relevant evidence which is not readily obtainable from other sources") (cleaned up). However, that doesn't mean all high-level executives must sit for discovery depositions at the whim of counsel. *Serrano*'s holding is more nuanced: it's not enough for a high-level executive to merely claim that sitting for a deposition will be unduly burdensome; rather, the high-level executive must also specifically show that he or she will suffer "one of the harms listed in Rule 26(c)(1)(a) . . . to warrant a protective order." *Id.* at 901 (explaining that "we have declined 'to credit a [corporate officer's] bald assertion that being deposed would present a substantial burden,' and still required the corporate officer to meet Rule 26(c)(1)'s requirements") (quoting *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009)). *Serrano* wasn't a radical deviation from this circuit's precedent related to protective orders and high-level executive depositions, rather, it corrected the misguided approach taken by a few district courts in the early 2010s. *Id.*

Here, SIG Sauer doesn't seek to protect Cohen from a deposition merely because he's a busy high-level executive (as the then-misguided district courts would've held to be enough). Instead, SIG Sauer seeks to prevent Cohen's deposition because (1) he "has no unique personal knowledge about this issue," (2) other SIG Sauer employees are better situated to provide Davis the discovery he seeks (that is, the discovery is available through another more convenient and less expensive source), *and consequently*, (3) Cohen will be unduly burdened by sitting for a deposition. That's exactly the showing that SIG Sauer needed to make (both pre- and post-*Serrano*). *Serrano*, 699 F.3d at 901 (explaining that the Sixth Circuit has always required a

high-level executive deponent "to meet Rule 26(c)(1)'s requirements" to obtain a protective order blocking the deposition); *see also Duncan v. Husted*, No. 2:13-cv-1157, 2015 WL 631103, at *3 (S.D. Ohio Feb. 12, 2015) (explaining that *Serrano*'s "directive" is for district courts to "not assume, without being provided with some evidence, that a particular deposition would be unduly burdensome or harassing"). Critically, SIG Sauer's position is supported with evidence: the prior deposition of SIG Sauer's Senior Director of Law Enforcement Sales, Matt Farkas (which was taken by Zimmerman in a different case concerning the same SIG Sauer firearm—the P320).[3] [R. 23-7].

Recall that, in another matter, Zimmerman (Davis's counsel) questioned Toner (SIG Sauer's corporate designee) about SIG Sauer's decision to omit a trigger-safety mechanism from its P320 model firearm. [R. 22-1]. Specifically, Zimmerman asked Toner at what "level" "the decision to sell the P320s without a manual external safety" was made. [*Id.*]. Toner said he was "not sure if it went up another level or not," but surmised that *if* the decision were made at a higher "level," then "at that level" the decision would've been discussed with SIG Sauer's CEO: Cohen. [*Id.*]. However, Farkas's deposition—which was taken *after* Toner's—clarified that Cohen didn't make the decision to sell the P320 without an external safety. [*Id.* at pgs. 33–34]; *see also* [R. 23-5] (Cohen's affidavit). Rather, Farkas testified that he was directly involved in the decision and that he knew the others involved in the decision (such as, Gary Wade, SIG Sauer's now-deceased former Vice President of Law Enforcement Sales).

In short, Toner's testimony that Cohen might've been involved in the decision (which is the testimony Davis relied on in filing its motion to compel Cohen's deposition) is speculative at

---

[3] Notably, Zimmerman took Farkas's deposition *after* he took Toner's deposition (both in the other P320 case). While Toner speculated that Cohen might've been involved in the decision, Farkas's testimony clarified that Cohen wasn't involved at all. Davis's counsel, Zimmerman, knows this because he took *both* depositions. *See infra.*

best. While Cohen might conceivably have some relevant information related to Davis's lawsuit, it's a certainty that the information "can be obtained from some other source that is more convenient, less burdensome, or less expensive" by deposing some other SIG Sauer employee, like Farkas, who was actually involved in the decision to sell P320s without an external trigger mechanism. FED. R. CIV. P. 26(b)(2)(c)(1). Thus, SIG Sauer compellingly shows a Rule 26(c) harm—that it will suffer "undue burden or expense" if Cohen is subjected to a deposition at this time.

      SIG Sauer also shows good cause for entry of a protective order. To demonstrate good cause a movant "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought." *Nix*, 11 F. App'x at 500. If Cohen were compelled to sit for a deposition limited to SIG Sauer's decision to sell P320s without an external trigger mechanism, he'd be questioned on topics that he has no knowledge of—to the detriment of SIG Sauer's daily operations. [R. 23 at pg. 7] ("Requiring Mr. Cohen to sit for the requested deposition will unduly burden him and Sig Sauer by diverting substantial time and resources from his duties as CEO.").

      Here, as in *Duncan*, Davis should first attempt to depose other subordinate employees of SIG Sauer before rushing to depose its CEO. Such depositions will "be more convenient" and "less expensive," and it's clear that other employees, like Farkas, are "actually more likely" to "be able to answer the questions which [Davis] wishes to ask." *Duncan*, 2015 WL 631103, at *4. Thus, the Court will grant SIG Sauer's motion for a protective order "to the extent that it seeks to postpone, and perhaps eliminate altogether, the deposition of [Cohen] until [other subordinate SIG Sauer's employees are] deposed." *Id.*

Page **7** of **8**

D

Davis wants to depose SIG Sauer's CEO. SIG Sauer wants to prevent its CEO's deposition. Davis fails to show that SIG Sauer's CEO will provide relevant discovery proportional to the needs of his case, so his motion to compel [R. 22] is DENIED. Likewise, because the discovery Davis seeks is available by less intrusive means, SIG Sauer's motion for a protective order [R. 23] is GRANTED.

IT IS SO ORDERED.

Signed May 5, 2023.



Signed By:
*Edward B. Atkins*  EBA
United States Magistrate Judge