UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| TIMOTHY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:22-cv-00010-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SIG SAUER, INC., | ) | **AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is before the Court on Defendant Sig Sauer's Motion to Exclude Evidence and Opinions of Plainfiff's Expert James Tertin [R. 39], Sig Sauer's Motion to Exclude Evidence and Opinions by Plaintiff's Expert William Vigilante [R. 40], and Sig Sauer's Motion for Summary Judgment [R. 41.]  Each motion is fully briefed, and the matter is ripe for review.  For the reasons outlined below, Sig Sauer's motions are **GRANTED**.

**I**

In January 2021, while exiting his vehicle, Plaintiff Timothy Davis's Sig Sauer P320 X-Carry pistol discharged unexpectedly.  [R. 23-1 at 17.]  Consequently, Mr. Davis's leg was struck with a 9mm hollow-point bullet, which severely injured his leg.  The details of the circumstances surrounding the incident are unclear.  In his deposition testimony, Mr. Davis claims that he was sitting in his vehicle when he opened up his console, inserted the P320 into his holster, and then went to put his leg out of his vehicle when the pistol discharged.  *Id*. According to Mr. Davis, his P320 was fully holstered and "locked in" to the holster on his left hip.  *Id*.  A police report written by the sheriff's deputy who responded to the incident scene and

an EMT report tell a different story. According to them, Mr. Davis explained that he was attempting to holster his P320 when the pistol discharged. [R. 39-3 at 4; R. 39-4 at 3.] Either way, Mr. Davis alleges that his P320 discharges without a trigger pull, which Sig Sauer disputes.

Mr. Davis brought this product liability action asserting strict products liability and negligence on Sig Sauer's part. [R. 18.] In support of his claims, Mr. Davis offers expert testimony from James Tertin, a gunsmith, and William Vigilante, a human factors engineer. Mr. Davis's P320 pistol does not come with any external safeties, such as a tabbed trigger or a thumb safety. According to Messrs. Tertin and Vigilante, this lack of external safeties renders Mr. Davis's version of the P320 defective because it is a single-action pistol with a short trigger pull. [R. 23-2] [R. 40-5.] Without an external manual safety, the firearm becomes unreasonably dangerous because the trigger is more likely to be actuated, which in turn means that the P320 is more likely to accidentally discharge.

Messrs. Tertin and Vigilante both opine that Sig Sauer's failure to incorporate a manual safety into the P320 caused the pistol to be defective. Moreover, they opine that the alleged defect was the proximate cause of Mr. Davis's injury. Sig Sauer moves to exclude the opinions of Messrs. Tertin and Vigilante, which Mr. Davis opposes. Sig Sauer also moves for summary judgment, arguing that, with the exclusion of Mr. Davis's experts, there is no genuine dispute of material fact and that Mr. Davis fails to prove causation.

## II

### A

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. It permits an expert to testify about scientific knowledge if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a

2

fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also United States v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021). The Sixth Circuit, applying *Daubert*, outlines four inquires that guide the reliability analysis: "Is the technique testable? Has it been subjected to peer review? What is the error rate and are there standards for lowering it? Is the technique generally accepted in the relevant scientific community?" *Id*. (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593-94 (1993)). Put more simply, "[t]o be admissible, any relevant scientific or technical evidence must be the product of reliable principles and methods and must have been reliably applied in the case." *Id*. (internal quotations omitted).

"Daubert['s] factors do not constitute a 'definitive checklist or test,' but may be tailored to the facts of a particular case." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). Thus, the test of reliability is "flexible." *Id*. The district court must act as a "gatekeeper" to ensure that only reliable and relevant expert testimony and evidence go to the jury. *Id*.; *see also Daubert*, 509 U.S. at 597. "The objective of that requirement . . . [i]s to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. The proponent of the expert testimony must establish its admissibility by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

Here, Sig Sauer challenges in multiple ways the proffered testimony of Messrs. Tertin and Vigilante. First, Sig Sauer argues that the causation opinions offered by Messrs. Tertin and

3

Vigilante should be excluded because each opinion is speculative and rests on unreliable foundations. Sig Sauer also challenges Mr. Vigilante's qualifications to provide an opinion on firearm design.[1] Ultimately, Sig Sauer seeks to exclude Messrs. Tertin and Vigilante from opining that Mr. Davis's accident most likely would not have occurred had the P320 been equipped with a thumb safety or tabbed trigger safety. After extensive review of the record, the Court agrees that neither Mr. Tertin nor Mr. Vigilante has a reliable factual basis for their opinions regarding causation.

First, Mr. Tertin opines that any single-action firearm without a manual thumb safety is defective. [R. 39-1 at 6.] He also opines that it is "common-sense" that tabbed-triggers reduce the instances of unintentional discharges. *Id*. Based on these opinions, Mr. Tertin concludes that a tabbed trigger "probably would have prevented the accident," and that the defective design was the proximate cause of Mr. Davis's accident. *Id*. at 23; [R. 23-2 at 20.] Mr. Tertin admits, however, that he has no information as to what caused Mr. Davis's trigger to depress. [R. 39-1 at 23.] Mr. Tertin further admitted that he doesn't even know whether Mr. Davis was seated or standing when the pistol discharged, and that he didn't do any further analysis into the circumstances surrounding Mr. Davis's accident. *Id*. at 22-23. According to Mr. Tertin, no further analysis is needed because he does not intend to offer any opinions as to how Mr. Davis's accident occurred. *Id*. at 23. Mr. Tertin performed no analysis as to what may have pulled the trigger and, to reiterate, admits that he has no information as to what actually depressed the trigger. *Id*. And with regard to a manual thumb safety, Mr. Tertin cannot say with any definitive certainty whether Mr. Davis would have had the thumb safety engaged even if the P320 came equipped with the feature.

---

[1] Because the Court ultimately concludes that Mr. Vigilante's testimony must be excluded based on its reliability, the Court foregoes any lengthy analysis of determining Mr. Vigilante's bona fides.

4

All of the above leads the Court to find that Mr. Tertin's conclusion that the lack of a manual safety was the proximate cause of Mr. Davis's accident is pure speculation. Although it may be "common sense" that some types of manual safeties reduce the number of unintentional discharges, Mr. Tertin provides no empirical evidence to prove as much. And with no attempt to even determine what may have depressed Mr. Davis's trigger, the Court agrees with Sig Sauer that Mr. Tertin's conclusions are purely "ipse dixit." Accordingly, because Mr. Tertin's opinion is speculative, without any basis in fact, it is inadmissible to prove causation.

Mr. Vigilante's opinion suffers a similar fate. According to Mr. Vigilante, the absence of an external manual safety rendered the P320 defective and unreasonably dangerous, and was the cause of the unintentional discharge. And according to Mr. Vigilante, there are three ways a trigger can move: through inertia, through contact with a foreign object, or through contact with a body part. [R. 40-4 at 7.] Yet Mr. Vigilante does not have any opinion on how Mr. Davis's trigger became engaged. He does not know what depressed the trigger, nor what part of the trigger was contacted causing it to move. *Id*. at 8. Mr. Vigilante admits that he has not inspected Mr. Davis's pistol nor Mr. Davis's holster, and bases his understanding of how the accident occurred solely on Mr. Davis's deposition and a sheriff's report. *Id*. at 4. Mr. Vigilante did not speak with Mr. Davis about how the accident occurred. *Id*. at 4-5. Mr. Vigilante did not review the deposition testimony of any of the first responders. *Id*. at 5. And he has not performed any testing or analysis of the physical evidence to confirm whether Mr. Davis's version of the accident is even plausible. *Id*. at 8-9. Mr. Vigilante's opinions are scarcely, if at all, based on any of the facts related to Mr. Davis's case.

Thus, it appears that the specific circumstances surrounding this particular accident are not important to Mr. Vigilante. He bases his causation opinion upon a general conclusion that it

5

is unsafe for Sig Sauer to sell the P320 without a manual safety. Even these generalized conclusions are founded on shaky ground—when Mr. Vigilante was asked in another similar matter whether he had done any studies regarding the P320's rate of unintentional discharges compared to other "striker fire pistols," Mr. Vigilante admits that he did not. [R. 40-6 at 3-4.] Mr. Vigilante's opinion on the P320's rate of unintentional discharge relies on Youtube videos and a memorandum by the United States Immigration and Customs Enforcement Agency. *Id*. This partially "anecdotal" data is hardly the type of empirical evidence that Rule 702 demands to admit expert testimony. Even if the Court accepts the assumption that the absence of a manual safety on the P320 is a design defect, it does not necessarily follow that the defect was the cause of Mr. Davis's accident. Mr. Vigilante does not provide any factual basis for his conclusion that a manual safety would have made this particular accident less likely to have occurred. Due to the lack of investigation into the specific circumstances of Mr. Davis's accident, Mr. Vigilante's opinions regarding the cause of that accident are too speculative. His conclusions lack any indicia of reliability that might help a jury to determine what ultimately caused Mr. Davis's trigger to be pulled. Accordingly, because his causation opinion is not sufficiently reliable as applied to the facts of this particular case, Mr. Vigilante's expert testimony must be precluded.

The Court will briefly address another argument that Mr. Davis asserts in support of admitting the expert testimony of Messrs. Tertin and Vigilante. In his response to Sig Sauer's motion for summary judgment, Mr. Davis compares and contrasts two recent Orders entered by other district courts that considered almost identical motions filed by Sig Sauer. [*See* R. 51.] In each of these cases, plaintiffs have offered the testimony of Messrs. Tertin and Vigilante, and Sig Sauer has moved to exclude their testimony and for summary judgment. One court, in the Northern District of Georgia, partially denied Sig Sauer's motions. [*See* R. 51-14.] Another

court, in the Western District of Oklahoma, granted Sig Sauer's motions. *See Herman v. Sig Sauer*, No. CIV 21-1038-R, 2023 U.S. Dist. LEXIS 159146 (W.D. Okla. Sep. 8, 2023). Mr. Davis argues that this Court should distinguish *Herman* because the facts in the present case are so distinct. [R. 51 at 24.] He suggests that this Court should distinguish *Herman* as the district court in the Northern District of Georgia did when it recognized that the opinions of Messrs. Tertin and Vigilante were based on the specifics of the incident at issue. *Id.*

The Court has reviewed both Orders and their supporting records. Ultimately, the Court concludes that *Herman* is not distinguishable, at least when it comes to the reasoning that supports the exclusion of expert testimony by Messrs. Tertin and Vigilante. While it may be that the Northern District of Georgia recognized that the opinions of Messrs. Tertin and Vigilante were based on the specifics of the incident at issue in that particular case, the Court finds no similar evidence of such here. Rather, like the *Herman* court, what this Court finds is broad conclusions regarding an alleged defect in Sig Sauer's P320 that are then applied generally to the facts of the case. Mr. Tertin and Mr. Vigilante both admit that the specific circumstances surrounding Mr. Davis's incident aren't tremendously important to their opinions. [*See* R. 39-1 at 14, 23 and R. 40-4 at 4-9.] Thus, as explained above, neither expert can be relied upon to render an accurate and helpful opinion as to what may have caused the injury in Mr. Davis's particular case. Both experts, therefore, must be precluded from testifying.

**B**

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus

7

summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. Of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co*., 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting Anderson, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

Kentucky law governs this diversity action. The Kentucky Product Liability Act "defines a 'product liability action' as 'any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation . . . warning, instructing, marketing, advertising, packaging, or labeling of any product.'" *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011) (quoting Ky. Rev. Stat. Ann. § 411.300(1)

8

(2010)). The Act "applies to all damages claims arising from the use of products, regardless of the legal theory advanced." *Monsanto Co. v. Reed*, 950 S.W.2d 811, 814, 44 5 Ky. L. Summary 22 (Ky. 1997). Plaintiffs may advance a product liability action under the theory of strict liability, negligence, and breach of warranty. *Prather v. Abbott Labs.*, 960 F. Supp. 2d 700, 705 (W.D. Ky. 2013) (citing *Williams v. Fulmer*, 695 S.W.2d 411, 412 (Ky. 1985)). Kentucky law recognizes three theories of product liability: (1) defective design, (2) defective manufacture, and (3) failure to warn. *Id*. (citing *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 251 (Ky. 1995). To succeed, a plaintiff must prove the existence of a defect and that the defect was the legal cause of the alleged damages. *Id*. at 706 (citing *McCoy v. Gen. Motors Corp.*, 47 F. Supp. 2d 838, 839 (E.D. Ky. 1998)); *see also Smith*, 657 F.3d at 423.

Here, Mr. Davis's product claim is premised on strict products liability and negligence. [R. 18.] Unfortunately for Mr. Davis, he cannot show that there is a genuine issue of material fact regarding the existence of a defect in the P320. Mr. Davis argues that the causation opinions proffered by his experts create a genuine factual dispute as to whether a defect exists in the P320 and whether the alleged defect caused Mr. Davis's injury. That argument is disposed of by the Court's determination that the opinions of Messrs. Tertin and Vigilante are inadmissible. No worries, says Mr. Davis. He argues that his claims can survive without expert opinions on the issue of causation because the issue is well within the understanding of an ordinary juror. [R. 51 at 21-23.] Thus, Mr. Davis maintains, his claims can be proven through circumstantial evidence.

As explained by a sister court applying Kentucky law, "[e]xpert testimony is almost always needed to meet the plaintiff's burden in a products liability case." *Honaker v. Innova, Inc.*, No. 1:04-CV-132(M), 2007 U.S. Dist. LEXIS 30225, at *4 (W.D. Ky. Apr. 23, 2007). An expert may be required where the question is of a complex and technical nature such that a lay

9

juror could not, without the aid of the expert, infer that a defect caused the plaintiff's injury. *Stevens v. Keller Ladders*, 1 Fed. App'x 452, 458 (6th Cir. 2001).  Contrastly, expert testimony is not required where "the nature of the defect and resultant injuries are so obvious as to fall within the general knowledge of the ordinary person."  *Honaker*, 2007 U.S. LEXIS 30225, at *5 (citing William S. Hanes, *Kentucky Jurisprudence: Torts* § 21-28 (1987)).  In short, matters of general knowledge do not require expert testimony, while more technical matters do.

We agree with a sister court considering a similar action against Sig Sauer that "[t]he inner workings and mechanics of the P320 are not matters of general knowledge, but instead involve a complex and technical understanding of firearms, engineering, and physics to fully determine whether a defect exists."  *See Mayes v. Sig Sauer, Inc.*, No. 1:19-CV-00146, 2023 U.S. Dist. LEXIS 54976, at *30 (W.D. Ky. March 30, 2023).  Thus, expert testimony is required to prove that the P320 is defective and that the alleged defect caused Mr. Davis's injury.  Messrs. Tertin and Vigilante are Mr. Davis's only witnesses proffered to testify regarding the alleged defect of the P320.  With their exclusion, Mr. Davis is left with no expert witness to testify as to the alleged defect and causation.  Because Mr. Davis cannot demonstrate that a defect exists and that the alleged defect caused his injury, his claims lack an essential element and fail under Kentucky law.  Accordingly, Sig Sauer's motion for summary judgment must be granted.

### III

Mr. Davis's accident is extremely unfortunate.  For the reasons explained above, however, the testimony of his proffered experts must be excluded and Sig Sauer's motion's must prevail.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Sig Sauer's Motion to Exclude Evidence and Opinions of Plainfiff's Expert

James Tertin **[R. 39]** is **GRANTED**;

2. Sig Sauer's Motion to Exclude Evidence and Opinions by Plaintiff's Expert William Vigilante **[R. 40]** is **GRANTED**;

3. Sig Sauer's Motion for Summary Judgment **[R. 41]** is **GRANTED**; and

4. Judgment in favor of Sig Sauer **SHALL** be entered promptly.

This the 4th day of January 2024.

Gregory F. Van Tatenhove
United States District Judge